UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------- x
                                           :      Case No. 12-13722 (BRL)

In re                             :
                                         :

CALVIN JACKSON,               :      (Chapter 7)
                      Debtor.     :
                                         :

--------------------------------------------------------- x
TRACY HOPE DAVIS, the     :
UNITED STATES TRUSTEE,   :
                                         :

                  Plaintiff,   :
                                         :      Adv. Proceeding No. _____ (BRL)

         - *vs.* -               :
                                         :

CALVIN JACKSON,              :
                                         :

                  Defendant.  :
--------------------------------------------------------- x

**COMPLAINT OBJECTING TO DISCHARGE OF DEBTOR
PURSUANT TO 11 U.S.C. §§ 727(a)(2)(A), 727(a)(2)(B),
727(a)(3), 727(a)(4)(A), 727(a)(4)(D), 727(a)(5), and 727(a)(6)(A)**

       Tracy Hope Davis, the United States Trustee for Region 2 (the "Plaintiff," or the "United States Trustee"), by and through the undersigned attorney, as and for her complaint objecting to the discharge of Calvin Jackson (the "Defendant" or the "Debtor"), pursuant to 11 U.S.C. §§ 727(a)(2)(A), 727(a)(2)(B), 727(a)(3), 727(a)(4)(A), 727(a)(4)(D), 727(a)(5) and 727(a)(6)(A), respectfully alleges as follows:

**PARTIES**

       1.      The Plaintiff, Tracy Hope Davis, is the United States Trustee for Region 2, with offices located at U.S. Federal Office Bldg., 201 Varick Street, Room 1006, New York, New York 10014.

1

2.      The Defendant, Calvin Jackson, is the Debtor in the above-captioned bankruptcy

case and, upon information and belief, is an individual residing at 1158 East 221st Street, Bronx,

New York 10469.

## JURISDICTION, VENUE AND STATUTORY PREDICATES FOR RELIEF

3.      Plaintiff, Tracy Hope Davis, is the United States Trustee for Region 2.   United

States Trustees are officials of the Department of Justice appointed by the Attorney General to

supervise the administration of bankruptcy cases and trustees.   See 28 U.S.C. §§ 581-589.

4.      The United States Trustee possesses standing to pursue her complaint under 11

U.S.C. §§ 307 and 727(c)(1).

5.      The Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334 and the "Standing

Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the

Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.).

6.       Venue is proper pursuant to 28 U.S.C. § 1409(a).

7.      The filing of this Complaint initiates an adversary proceeding.   Federal Rule of

Bankruptcy Procedure ("Rule") 7001(4).

8.      Such adversary proceeding constitutes a core proceeding.   28 U.S.C. §

157(b)(2)(J).

9.      The statutory and other predicates for the relief sought in this matter are 11 U.S.C.

§§ 105(a), 541 and 727, and Rules 4004(a) and 7001.

## ALLEGATIONS COMMON TO ALL COUNTS

### A.    Background

10.    On August 30, 2012 (the "Filing Date"), the Debtor commenced this case with the filing of a voluntary petition (the "Petition"), along with Schedules A through J (collectively, the "Initial Schedules") and a Statement of Financial Affairs (the "Initial SOFA") under Chapter 7 of the Bankruptcy Code.   See ECF Doc. No. 1.   True and correct copies of the Petition, Initial Schedules, and Initial SOFA are attached hereto as **Exhibits "A", "B", and "C"**, respectively.

11.    The Debtor signed his Petition, Schedules, and Initial SOFA under penalty of perjury.   See Exhs. A-C.

12.    Narissa A. Joseph, Esq. ("Counsel"), executed the Petition as counsel for the Debtor. See ECF Doc. No. 1.

13.    The Debtor checked the box on his Petition indicating that his "Debts are primarily consumer debts."   See Exh. A.

14.    On the Filing Date, Jil Mazer-Marino (the "Chapter 7 Trustee") was appointed as interim Chapter 7 trustee, and thereafter, in accord with 11 U.S.C. § 702(d), became the permanent Chapter 7 Trustee.

15.    The Debtor filed First Amended Schedules B and C on September 18, 2012.   ECF Doc. No. 6.   The Debtor filed Second Amended Schedules B and C on September 26, 2012.   ECF Doc. No. 7.   True and correct copies of the First and Second Amended Schedules B and C are attached hereto as **Exhibit "D"**.

16.     The Debtor filed an amended Statement of Financial Affairs (the "Amended SOFA") on September 26, 2012.   ECF Doc. No. 8.   A true and correct copy of the Amended SOFA is annexed as **Exhibit "E"**.

17.     The Debtor signed his First Amended Schedules B and C, Second Amended Schedules B and C, and Amended SOFA under penalty of perjury.   See Exhs. D and E.

**B.     The Debtor's Schedules and Statement of Financial Affairs**

18.     Assets.   In his Initial Schedules, the Debtor listed personal property with an aggregate value of $53,769 on Schedule B.   See Exh. B, Schedule B (Personal Property).

19.     On his Second Amended Schedule B, the Debtor listed personal property with an aggregate value of $39,406.73.   See Exh. D.

20.     The assets listed by the Debtor on his Second Amended Schedule B include "used clothing" valued at $500.00.   See id.

21.     Liabilities.   The Debtor's Schedule F lists nine creditors, with respect to which the Debtor has an aggregate sum of $186,797 in unsecured, non-priority liabilities.   See Exh. B.

22.     The largest unsecured, non-priority creditor listed on the Debtor's Schedule F is Helen H. Biggett ("Ms. Biggett"), who is listed on Schedule F as a "judgment creditor" with a claim in the amount of $178,080.   Id.

23.     In addition, Schedule F lists one revolving account with *Dsnb Macys* in the amount of $3,582, among other debts.   Id.

24.     Income.   According to his Schedule I (Current Income of Individual Debtor), the Debtor earns an average monthly income of $1,000, consisting entirely of contributions from family members.   See Exh. B, Schedule I.

4

25.    According to his Schedule I, the Debtor is separated from his spouse with no dependents.  Id.

26.    The Debtor did not disclose any information regarding employment on Schedule I. See id.

27.    According to his Amended SOFA, Item No 1, the Debtor had an income from employment of $94,000 in 2011 and $64,000 in 2010.   See Exh. E (Amended SOFA, Item No. 1).

28.    Expenses.   According to the Debtor's Schedule J (Current Expenditures of Individual Debtors), the Debtor lists monthly expenses of $1,245, resulting in an average monthly deficit of $245.   See Exh. B, Schedule J.

29.    Gifts.   In his response to Item No. 7 of the Initial SOFA and the Amended SOFA (Gifts), when asked to "List all gifts or charitable contributions made within **one year** preceding [the Filing Date], except ordinary and usual gifts to family members aggregating less than $200 in value per individual family member and charitable contributions aggregating less than $100 per recipient," (orig. bold), the Debtor checked the box labeled "None."   See Exhs. C and E (Initial SOFA and Amended SOFA, Item No. 7).

## C.    The Initial Meeting of Creditors

30.    The first date set for the meeting of creditors, pursuant to 11 U.S.C. § 341 (a), was October 3, 2012.   ECF Doc. No. 4 (the "Initial 341 Meeting").

31.    The Debtor's Initial 341 Meeting was held on October 3, 2012.   See Docket.

32.    The Debtor appeared at the Initial 341 Meeting, and was represented at such Meeting by his Counsel.

33.     The Chapter 7 Trustee presided and conducted the examination of the Debtor at the Initial 341 Meeting.

34.     No creditors of the Debtor, or parties other than the Chapter 7 Trustee, and the Debtor and his counsel, appeared at the Initial 341 Meeting.

35.     At the Initial 341 Meeting, the Chapter 7 Trustee asked the Debtor: "Mr. Jackson, can you please raise your right hand?   Do you swear or affirm to tell the truth, the whole truth, and nothing but the truth?"   The Debtor responded:   "I swear."

36.      Later, at the Initial 341 Meeting, the Chapter 7 Trustee elicited the following initial testimony from the Debtor:

Trustee:        The Schedules, as amended, are they true and complete?

Debtor:        Yes they are.

Trustee:        Do you have any changes or additions that you'd like to make today?

Debtor:        No.

37.     Later, at the Initial 341 Meeting, the Chapter 7 Trustee elicited the following testimony from the Debtor regarding an entity called "CJ Consultants."

Trustee:        Do you have an interest in a business called CJ Consultants?

Debtor:        Yes.

Trustee:        OK.   And what business was that?

Debtor:        Consulting work for contractors . . . basically, you know, referring workers to the jobs . . . laborers . . . construction workers . . . non-union.

Trustee:        Is CJ Consultants . . . just a DBA?

Debtor:        Yes.

6

Trustee:        Do you keep any books and records for CJ Consultants?

Debtor:         No I didn't.

Trustee:        So how did you know who would owe you money?

Debtor:         Well, I mean, I knew . . . 'cause personally.   You know, people personally.

Trustee:        So you never kept any records as to who owed you what?

Debtor:         No.   Nobody ever . . .

Trustee:        I mean, frankly, we're talking about $93,000 in gross receipts in 2010.

Debtor:         Yeah.

Trustee:        That's a lot of cash to keep account of.   And I know that you're saying that you had
                only a few jobs . . .

Debtor:         Yeah.

Trustee:        But that's substantial income, and you're saying that you did it all in your head.

Debtor:         Yeah.

Trustee:        And you kept account of it all in your head well enough to put that in your tax
                return.

Debtor:         Yes.   No, I mean I wrote it down.

Trustee:        Where did you write it down?

Debtor:         I . . . you know . . . in my book.   I would write it down in my book. . . .

Trustee:        So, where's the book?

Debtor:         It's at home.

Trustee:        Alright.   So, I'll take the book.

Counsel:        Alright.

Trustee:        The notebook that you used.   Is it a spiral notebook, or is it a black-and-white

7

marble notebook?   What does it look like?

Debtor:          . . . Yellow pad.

Trustee:         A yellow pad.   Like a legal pad?

Debtor:          Yes. . . . Different legal pads for each year.

Trustee:         What did you do with the legal pads for the prior years?   Do you keep them, or do you throw them out?

Debtor:          Well, since I went into the consulting business, I kept two, from 2010 to 2011.

Trustee:         And 2011 is when CJ went out of business?

Debtor:          Yes.

Trustee:         So I should expect two yellow legal pads, right?

Debtor:          Correct.

Trustee:         And, is it kind of just like a running day, or is a month per page or week per page?

Debtor          . . . Month per page.

Trustee:         So, what should I expect . . . to get?

Debtor:          About 10-11 pages.

Trustee:         Alright.   And those are the only records you kept with respect to CJ Consultants?

Debtor:          Yes.

Trustee:         And CJ Consultants isn't doing any more work, right?

Debtor:          No.

Trustee:         And when did you stop doing work as CJ Consultants?

Debtor:          . . . December.

Trustee:         December 2011?

Debtor:        Yes. . . .

     38.    Later, at the Initial 341 Meeting, the Chapter 7 Trustee elicited the following

testimony from the Debtor regarding an entity called "Dune Rite."

Trustee:       There was another business that I saw referenced . . . Dune Rite. . . . So, what did
               that do?   . . . Was Dune Rite a consultant also?

Debtor:        No, that was a cleaning company.   . . . and that ended back in 2007 . . . a DBA.

Trustee:       And, it was a cleaning service?

Debtor:        Yes.

Trustee:       It didn't do construction . . . it was just cleaning?

Debtor:        Yes, cleaning.
. . .
Trustee:       Were you ever in the construction business?

Debtor:        No.

Trustee:       Have you ever done any construction or remodeling work?

Debtor:        No.

Trustee:       Have you ever contracted to do any construction or remodeling work?

Debtor:        No.

     39.    At the conclusion of the Initial 341 Meeting, the Chapter 7 Trustee and the Debtor

engaged in the following exchange.

Trustee:       I'm looking for the books and records for CJ . . . I'm looking for the bank statements
               . . . So, everything is fully disclosed on your SOFA?

Debtor:        Yes.

     40.    The Initial 341 Meeting of the Debtor was adjourned to December 6, 2013 (the

"Second Meeting of Creditors").

**D.**    **The Chapter 7 Trustee's First Request for Information**

41.    Two days after the Initial 341 Meeting, by letter dated October 5, 2012 (the "Trustee's Oct. 5, 2012 Letter"), a true and correct copy of which is attached hereto as **Exhibit "F,"** the Chapter 7 Trustee requested the following from the Debtor:

(a)    Personal bank statements for July 2011 through July 2012.

(b)    Business bank statements for July 2011 through July 2012.

(c)    Any books and records relating to the business known as CJ Consultants.

(d)    Copies of any documents used to prepare tax returns related to the business known as CJ Consultants.

See id.

42.    By email to the Chapter 7 Trustee dated October 11, 2012 (the "Debtor's Oct. 11, 2012 Email"), a true and correct copy of which is attached hereto as **Exhibit "G,"** the Debtor's Counsel sent copies of several bank statements to the Chapter 7 Trustee regarding accounts held by the Debtor at Popular Community Bank (ending in x2501) and TD Bank (ending in x5670).

43.    In a response email to the Debtor's Counsel delivered on October 11, 2012 (the "Trustee's Oct. 11, 2012 Email"), a true and correct copy of which is attached hereto as **Exhibit "H"**, the Chapter 7 Trustee reiterated that she still had not received any books or records relating to CJ Consultants, nor copies of any documents used to prepare tax returns.   See id.

**E.**    **The Chapter 7 Trustee's Second Request for Information**

44.    As of October 24, 2012, the Debtor had not responded to the Trustee's Oct. 11, 2102 email.

10

45.     By letter dated October 24, 2012 (the "Oct. 24, 2012 Letter"), a true and correct copy

of which is attached hereto as **Exhibit "I"**, the Chapter 7 Trustee requested that the Debtor provide

the information below:

> (a)     All books and records relating to the business known as CJ Consultants.
>
> (b)     Copies of any documents used to prepare tax returns related to the business
>         known as CJ Consultants.

See id.

46.     The Debtor's Counsel responded to the Chapter 7 Trustee's Oct. 24, 2012 Letter by

delivering to her five (5) pages of handwritten notes of the Debtor, and copies of two bank

statements regarding an account held by the Debtor at JPMorgan Chase Bank, N.A. ("Chase"),

ending in x9469 (the "Chase Account x9469").

**F.     The Second Meeting of Creditors**

47.     The adjourned meeting of creditors was held on December 6, 2013 (the "Second

341 Meeting").

48.     The Debtor appeared at the Second 341 Meeting, and was represented thereat by

his Counsel.

49.     The Chapter 7 Trustee presided, and conducted the examination of the Debtor at,

the Second 341 Meeting.

50.     In addition to the Chapter 7 Trustee, and the Debtor and his Counsel, there were no

other appearances at the Second 341 Meeting.

51.     At the Second 341 Meeting, the Debtor was duly sworn by the Chapter 7 Trustee,

who then examined the Debtor concerning an automobile, as follows:

Trustee:    Okay.   And you have a 2008 Mercedes Benz.   Is that correct?

Debtor:    Yes.

Trustee:    Okay.   And when did you purchase that car?

Debtor:    In - - last year, November.

Trustee:    Okay.   So November 2011?

Debtor:    Yes.

. . .

Trustee:    . . . So - - and when you purchased it - - so it was 53 in total, 25 down, so that means 28,000 was due in cash right?

Debtor:    Yes.

Trustee:    Okay.   And was that paid in one lump sum or did you finance that or how did that work?

Debtor:    Well, my daughter paid the - -

Trustee:    Which daughter?

Debtor:    [First Name of "Adult Daughter"].

. . .

Trustee:    All right.   And where did she get the money to pay each half of the purchase price?

. . .

Debtor:    That's not - - you know, she works.   She's a lawyer, also.

Trustee:    Right.

Debtor:    I don't know.   She didn't get it from me or nothing like that.

52.    Later, at the Second 341 Meeting, the Debtor testified about CJ Consultans, as

follows:

12

Trustee:        When did that - - when did you start operating CJ Consultants?

Debtor:         2010.

Trustee:        And when did you stop operating CJ Consultants?

Debtor:         2011, end of 2011.

Trustee:        Okay.   And what did CJ do?

Debtor:         Well, I was the President of the Tremont Business and Community Organization
                up in the Bronx and what I would do is go around to like mostly the merchants and
                they would ask me if they had work - - I mean, if they needed some work to be done
                and I would consult them on, you know, who to hire and things like that.

. . .

Trustee:        So [in] 2010 and 2011 [your] only business, your only source of income, was CJ
                Consultants or gambling?

Debtor:         Yeah.   Yes.

. . .

Trustee:        I have some records that were provided to me that I'm going to show you page by
                page - -

Debtor:         Okay.

Trustee:        - - And it is a fax cover sheet plus one, two, three, four five faxed pages, and your
                counsel provided them to me based on what I had asked for at the last 341
                meeting.

Debtor:         Yes.

Trustee:        And they were offered in response to my request for records from your business.
                So as far as I understand, these are the only records from CJ Consultants.   Is that
                right?

Debtor:         Yeah.   That's correct.

13

. . .

Trustee:       . . . And then people would pay you.   You wouldn't give them receipts or anything, correct?

Debtor:        Yeah.

Trustee:       And you wouldn't give them 1099's.

Debtor:        No. . . . I didn't have no employees.

Trustee:       Okay.   Did you ever arrange to find employees for other businesses who needed - - like construction workers who needed employees?

Debtor:        Yes.   But I wouldn't go to the employee.   I would go to the owner of the - - you know, that owned the company and he would come provide the employees.   I had nothing to do with the employees.

Trustee:       Okay.   Would you help to secure the employees for the owner, the business owner?

Debtor:        No.

Trustee:       No?

Debtor:        I mean, I would - - like I said, I would go to someone who owned a construction company and they would tell me that - - you know, this is work that needed to be done in, you know, in the place of business.

      53.    Later, at the Second 341 Meeting, the Debtor testified about his consumer charges, as follows:

Trustee:       So all these are your charges or your - - your authorized charges.

Debtor:        Well, yes.

**G.**   **The Pre-Petition Judgment Held by Helen Biggett**

54.     Ms. Biggett, a creditor, contends that she, the Debtor and Dune-Rite Cleaning

Contractors ("Dune Rite") entered into an agreement in 2006 for several construction projects on

her home, and that she paid the Debtor and Dune Rite approximately $305,000 for this work.

Motion of Helen Biggett for Contempt Sanctions and Related Relief (the "Contempt Motion"),

ECF Doc. No. 73, ¶ 2, at 2.

55.     Ms. Biggett contends further that the Debtor and Dune Rite did not complete the

work after receiving payment, and were careless and negligent in selecting construction materials

and performing their services.   Id.

56.     Ms. Biggett contends further that she was forced to hire and pay other contractors to

finish some of the work that the Debtor and Dune Rite were supposed to complete.   Id., ¶ 4, at 3.

57.     On September 13, 2007, Ms. Biggett commenced the civil action styled Helen

Biggett v. Dune Rite Cleaning Contractors and Calvin Jackson, Index No. 236544/07 (New York

State Supreme Court, County of Queens), asserting causes of action based on breach of contract,

breach of warranty and negligence.   Id., ¶ 5, at 3.

58.     On March 12, 2009, the New York Supreme Court awarded Ms. Biggett a default

judgment in the sum of $133,040.00 plus interest from May 31, 2007 (the "Biggett Judgment").

Id.   The Biggett Judgment was revised by the New York Supreme Court on March 4, 2011 to

reflect accrued interest, for a total judgment amount of $178,080.41 against the Debtor and Dune

Rite.   Id.

**H.** **The Debtor's Dependents**

59.    On Item No. 6c of his U.S. Individual Income Tax Return for 2010 (Form 1040), the Debtor claims two exemptions for two "Dependent" children (the "Minor Son" and "Minor Daughter").

60.    On Item No. 6c of his U.S. Individual Income Tax Return for 2011 (Form 1040), the Debtor claims two exemptions for two "Dependent" children, *i.e.* – his Minor Son and Minor Daughter.

**I.** **The Debtor's Pre-Petition Purchases of Apparel; Deductions for Clothing**

61.     According to certain of the Debtor's Banco Popular and TD Bank statements for the period September 2010 through July 2012, the Debtor made approximately 57 purchase transactions at various apparel and accessory retailers, in the total amount of approximately $14,991.39, consisting of charges totaling $2,150.40 in 2010, charges totaling $9,377.25 in 2011, and charges totaling $3,463.74 in 2012 (the "Pre-Petition Apparel").

**J.** **The Debtor's Pre-Petition Transfers**

62.    On information and belief, in approximately early November, 2011, the Debtor's Adult Daughter purchased a car for the Debtor's use, using $15,000 that the Debtor previously had transferred to her.

63.    On information and belief, in October 2011, the Debtor transferred $33,000 to his Adult Daughter, through an intermediary third person (the "October 2011 Transfer").

64.    On information and belief, in May 2012, the Debtor transferred $20,000 to his Adult Daughter, through another intermediary third person (the "May 2012 Transfer").

16

**J.**    **The Debtor's Other Bank Accounts**

65.    As of the Petition Date, the Debtor held an account at Chase, ending in x1688 (the "Chase Account x1688").

66.    As of the Petition Date, the Debtor held an account at Chase, ending in x6602 (the "Chase Account x6602").

**K.**    **Discovery Orders and Sanctions Against the Debtor**

67.    On January 28, 2013, Ms. Biggett filed a motion, pursuant to Rule 2004, to direct the examination of witnesses and for the production of documents from the Debtor.    ECF Doc. No. 33.

68.    The Court granted Ms. Biggett's motion (the "Discovery Order") on February 11, 2013.   ECF Doc. No. 46.

69.    On May 16, 2013, Ms. Biggett filed a motion to compel the Debtor's compliance with the Discovery Order.   ECF Doc. No. 59.

70.    On June 6, 2013, the Court entered its Order Granting Motion of Helen Biggett to Compel Compliance with Order Granting Motion, Pursuant to Bankruptcy Rule 2004, to Direct the Examination of Witnesses and for the Production of Documents.   ECF Doc. No. 66 (the "Order to Compel").

71.    On July 10, 2013, Ms. Biggett filed a motion for contempt sanctions and related relief (the "Contempt Motion").   ECF Doc. No. 73.   In such Contempt Motion, Ms. Biggett alleged that "For over four months, the Debtor has failed to comply fully with the Discovery Order. In addition, the Debtor has entirely ignored the Order to Compel.   Ms. Biggett continues to be prejudiced by the Debtor's unreasonable delay and failure to obey two lawful orders of this Court." Id., ¶1, at 2.

72.     On July 11, 2013, the Chapter 7 Trustee filed a motion, pursuant to Rule 2004, for an order authorizing her to issue subpoenas to conduct examinations of, and to obtain documents from, certain witnesses.   ECF Doc. No. 74.

73.     On July 30, 2013, the Court entered its Order Authorizing Trustee to Issue Subpoenas to Conduct Examinations of, and to Obtain Documents from, Certain Witnesses.   ECF Doc. No. 77 (the "2004 Order").

74.     On September 24, 2013, the Court entered its Order Granting Motion of Helen Biggett for Contempt Sanctions and Related Relief.   ECF Doc. No. 85 (the "Contempt Order").

75.      The Contempt Order provides: "ORDERED that if the Debtor fails to fully comply with the Order to Compel within two (2) weeks of the entry of this Order, then the Court hereby imposes a daily fine in the amount of $400 per day, payable to the estate from postpetition assets of the Debtor, beginning on the fifteenth (15th) day after the entry of this Order, until the Debtor fully complies with the Order to Compel."   Id., at 2.   The Contempt Order provides further: "ORDERED that in connection with the subpoena issued by the Chapter 7 Trustee, the Debtor appear for examination on October 16, 2013, at 10:00 AM."   Id.

76.     Counsel for Ms. Biggett has advised the Office of the United States Trustee that the Debtor has not complied with the Order to Compel.

77.     Counsel for Ms. Biggett has advised the Office of the United States Trustee that the Debtor has not complied with the Discovery Order.

78.     Counsel for Ms. Biggett has further advised the Office of the United States Trustee that the Debtor failed to appear for examination as required by the Contempt Order.

18

79.     Counsel for the Chapter 7 Trustee has advised the Office of the United States Trustee that the Debtor has not complied with the Subpoena issued to him by the Chapter 7 Trustee pursuant to the 2004 Order.

80.     The Debtor has not appealed or sought that the Court reconsider or vacate either the Discovery Order, the Order to Compel, the 2004 Order, or the Contempt Order.   See Docket.

**L.     Extensions of Time to Object to Discharge of the Debtor**

81.     On November 29, 2012, the Court entered a stipulation and order extending the time for the Chapter 7 Trustee and the United States Trustee to object to the Debtor's discharge pursuant to 11 U.S.C. § 727, and the time within which the United States Trustee could file a motion pursuant to 11 U.S.C. § 707(b) through February 1, 2013.   See ECF Doc. No. 18.

82.     Thereafter, the Court entered three additional stipulations and orders extending the time to object to the Debtor's discharge, and the time within which the United States Trustee and the Chapter 7 Trustee could file complaints objecting to the Debtor's discharge or motions pursuant to 11 U.S.C. § 707(b).   ECF Doc. Nos. 40, 50, and 61.

83.     On August 28, 2013, the Court entered its fifth stipulation and order extending the time for the Chapter 7 Trustee and the United States Trustee to object to the Debtor's discharge pursuant to 11 U.S.C. §727, and the time within which the United States Trustee could file a motion pursuant to 11 U.S.C. § 707(b) through December 3, 2013.   See ECF Doc. No. 81.

**M.     Ms. Biggett's Objection to Discharge.**

84.     On November 20, 2013, Ms. Biggett filed the Complaint of Helen Biggett Objecting to Discharge of Debtor Pursuant to Sections 727(a)(2)(A), 727(a)(2)(B), 727(a)(3), 727(a)(4)(A), 727(a)(4)(D), 727(a)(5), and 727(a)(6)(A) of the Bankruptcy Code.   Biggett v. Jackson, Adv. Pro.

19

No. 13-1688 (BRL).

**COUNT ONE**

**Denial of Discharge Pursuant to 11 U.S.C § 727(a)(2) – Concealment**

85.    The United States Trustee re-alleges and incorporates the allegations contained in paragraphs 1 through 84.

86.    The Bankruptcy Code provides that the Court shall grant the debtor a discharge unless the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody under this title, has concealed property of the estate within one year prior to the filing of the petition [11 U.S.C. § 727(a)(2)(A)], and after the date of the filing of the petition.   [11 U.S.C. § 727(a)(2)(B)].

87.    The Debtor, with intent to hinder, delay, or defraud his creditors and the Chapter 7 Trustee, has concealed property of the estate, within one year before the Petition Date – *i.e.*, certain items of the Pre-Petition Apparel.

88.     The Debtor, with intent to hinder, delay, or defraud his creditors and the Chapter 7 Trustee, has concealed property of the estate, after the Petition Date – *i.e.*, certain items of the Pre-Petition Apparel.

89.    The Debtor, with intent to hinder, delay, or defraud his creditors and the Chapter 7 Trustee, has concealed property of the estate, within one year before the Petition Date – *i.e.*, Chase Account x9469.

90.     The Debtor, with intent to hinder, delay, or defraud his creditors and the Chapter 7 Trustee, has concealed property of the estate, after the Petition Date – *i.e.*, Chase Account x9469.

91.    The Debtor, with intent to hinder, delay, or defraud his creditors and the Chapter 7 Trustee, has concealed property of the estate, within one year before the Petition Date – *i.e.*, Chase Account x1688.

92.    The Debtor, with intent to hinder, delay, or defraud his creditors and the Chapter 7 Trustee, has concealed property of the estate, after the Petition Date – *i.e.*, Chase Account x1688.

93.    The Debtor, with intent to hinder, delay, or defraud his creditors and the Chapter 7 Trustee, has concealed property of the estate, within one year before the Petition Date – *i.e.*, Chase Account x6602.

94.    The Debtor, with intent to hinder, delay, or defraud his creditors and the Chapter 7 Trustee, has concealed property of the estate, after the Petition Date – *i.e.*, Chase Account x6602.

95.    Pursuant to 11 U.S.C. §§ 727(a)(2)(A) and (B), the Debtor should be denied his discharge.

## COUNT TWO

**Denial of Discharge Pursuant to 11 U.S.C § 727(a)(3) – Failing to Keep Recorded Information**

96.    The United States Trustee re-alleges and incorporates the allegations contained in paragraphs 1 through 95.

97.    The Chapter 7 Trustee has requested that the Debtor produce information from which his financial condition and business transactions might reasonably be ascertained.

98.    The Debtor failed to produce information permitting the Chapter 7 Trustee to reasonably ascertain the specifics of the Debtor's consulting business, CJ Consultants.

99.    The Debtor failed to keep or preserve documents with which his tax return for 2010 was prepared.

21

100.     The Debtor failed to keep or preserve documents with which his tax return for 2011 was prepared.

101.     The Debtor's failure to produce information, such as documents, records, and papers, upon reasonable request by the Chapter 7 Trustee, has prevented the Chapter 7 Trustee from ascertaining the Debtor's financial condition or business transactions.

102.     By failing to produce reported information to support the Debtor's testimony at the Initial 341 Meeting and Second 341 Meeting, the Debtor has failed to account for losses of assets and accrued debt.

103.     The Debtor's failure to produce documentary evidence indicates that he has concealed, destroyed mutilated, falsified or failed to keep or preserve recorded information from which his financial condition or business transactions might be ascertained, and thus warrants denial of the Debtor's discharge pursuant to 11 U.S.C. § 727(a)(3).

104.     Pursuant to 11 U.S.C. § 727(a)(3), the Debtor should be denied his discharge.

**COUNT THREE**

**<u>Denial of Discharge Pursuant to 11 U.S.C. § 727(a)(4)(A) – Making False Oaths</u>**

105.     The United States Trustee realleges and incorporates the allegations contained in paragraphs 1 through 104.

106.     The Debtor knowingly and fraudulently made false oaths and accounts in and in connection with his bankruptcy case by, under penalty of perjury, failing to disclose the Pre-Petition Apparel on his Schedule B.

107.    The Debtor knowingly and fraudulently made false oaths and accounts in and in connection with his bankruptcy case by, under penalty of perjury, scheduling clothing with a value of only $500 on his Schedule B.

108.    The Debtor knowingly and fraudulently made false oaths and accounts in and in connection with his bankruptcy case by, under penalty of perjury, failing to disclose Chase Account x9469 on his initial Schedule B.

109.    The Debtor knowingly and fraudulently made false oaths and accounts in and in connection with his bankruptcy case by, under penalty of perjury, failing to disclose Chase Account x1688 on his Schedule B.

110.    The Debtor knowingly and fraudulently made false oaths and accounts in and in connection with his bankruptcy case by, under penalty of perjury, failing to disclose Chase Account x6602 on his Schedule B.

111.    The Debtor knowingly and fraudulently made false oaths and accounts in and in connection with his bankruptcy case by, under penalty of perjury, failing to list his Minor Son as a dependent on his Schedule I.

112.    The Debtor knowingly and fraudulently made false oaths and accounts in and in connection with his bankruptcy case by, under penalty of perjury, failing to list his Minor Daughter as a dependent on his Schedule I.

113.    The Debtor knowingly and fraudulently made false oaths and accounts in and in connection with his bankruptcy case by, under penalty of perjury, failing to list on Item 11.a of his Initial SOFA the October 2011 Transfer to his Adult Daughter.

114.    The Debtor knowingly and fraudulently made false oaths and accounts in and in connection with his bankruptcy case by, under penalty of perjury, failing to list on Item 11.a of his Amended SOFA the October 2011 Transfer to his Adult Daughter.

115.    The Debtor knowingly and fraudulently made false oaths and accounts in and in connection with his bankruptcy case by, under penalty of perjury, failing to list on Item 11.a of his Initial SOFA the May 2012 Transfer to his Adult Daughter.

116.    The Debtor knowingly and fraudulently made false oaths and accounts in and in connection with his bankruptcy case by, under penalty of perjury, failing to list on Item 11.a of his Amended SOFA the May 2012 Transfer to his Adult Daughter.

117.    The Debtor knowingly and fraudulently made false oaths and accounts in and in connection with his bankruptcy case by, under penalty of perjury at his Initial 341 Meeting, testifying "No," when asked by the Chapter 7 Trustee: "Were you ever in the construction business?"

118.    The Debtor knowingly and fraudulently made false oaths and accounts in and in connection with his bankruptcy case by, under penalty of perjury at his Initial 341 Meeting, testifying "No," when asked by the Chapter 7 Trustee: "Have you ever done any construction or remodeling work?"

119.    The Debtor knowingly and fraudulently made false oaths and accounts in and in connection with his bankruptcy case by, under penalty of perjury at his Initial 341 Meeting, testifying "No," when asked by the Chapter 7 Trustee: "Have you ever contracted to do any construction or remodeling work?"

120.    The Debtor knowingly and fraudulently made false oaths and accounts in and in connection with his bankruptcy case by, under penalty of perjury at his Initial 341 Meeting, testifying that Dune Rite was a "cleaning company" when asked by the Chapter 7 Trustee: "Was Dune Rite a consultant also?"

121.    The Debtor knowingly and fraudulently made false oaths and accounts in and in connection with his bankruptcy case by, under penalty of perjury at his Initial 341 Meeting, testifying "Yes" when asked by the Chapter 7 Trustee: "And [Dune Rite] was a cleaning service?"

122.    The Debtor knowingly and fraudulently made false oaths and accounts in and in connection with his bankruptcy case by, under penalty of perjury at his Initial 341 Meeting, testifying "Yes, cleaning," when asked by the Chapter 7 Trustee: "[Dune Rite] didn't do construction . . . it was just cleaning?"

123.    The Debtor knowingly and fraudulently made false oaths and accounts in and in connection with his bankruptcy case by, under penalty of perjury at his Initial 341 Meeting, testifying that CJ Consultants Consulting did "work for contractors . . . basically, you know, referring workers to the jobs . . . laborers . . . construction workers . . . non-union", but then at his Second 341 Meeting, when asked by the Chapter 7 Trustee: "And what did CJ do?," testifying: "Well, I was the President of the Tremont Business and Community Organization up in the Bronx and what I would do is go around to like mostly the merchants and they would ask me if they had work - - I mean, if they needed some work to be done and I would consult them on, you know, who to hire and things like that."

124.    The Debtor knowingly and fraudulently made false oaths and accounts in and in connection with his bankruptcy case by, under penalty of perjury at his Second 341 Meeting, testifying that "She didn't get it from me or nothing like that," when asked by the Chapter 7 Trustee: "And where did [your Adult Daughter] get the money to pay each half of the purchase price [for your 2008 Mercedes Benz]?

125.    Pursuant to 11 U.S.C. § 727(a)(4)(A), the Debtor should be denied his discharge.

## COUNT FOUR

## Denial of Discharge Pursuant to 11 U.S.C. § 727(a)(4)(D) – Withholding Recorded Information

126.    The United States Trustee re-alleges and incorporates the allegations contained in paragraphs 1 through 125.

127.    The Debtor knowingly and fraudulently withheld from an officer of the estate entitled to possession under title 11 recorded information relating to his property or financial affairs in and in connection with his bankruptcy case, *i.e.* – the documents with which his tax return for 2010 was prepared.

128.    The Debtor knowingly and fraudulently withheld from an officer of the estate entitled to possession under title 11 recorded information relating to his property or financial affairs in and in connection with his bankruptcy case, *i.e.* – the documents with which his tax return for 2011 was prepared.

129.    Pursuant to 11 U.S.C. § 727(a)(4)(D), the Debtor should be denied his discharge.

## COUNT FIVE

**Denial of Discharge Pursuant to 11 U.S.C. § 727(a)(5) – Failing to Explain Losses**

130.    The United States Trustee re-alleges and incorporates the allegations contained in paragraphs 1 through 129.

131.    The Bankruptcy Code provides that the Court shall grant the debtor a discharge unless the debtor has failed to satisfactorily explain any loss of assets or deficiency of assets to meet the debtor's liabilities.    11 U.S.C. § 727(a)(5).

132.    Even though the Chapter 7 Trustee has requested documents with which the Debtor's tax returns for 2010 and 2011 were prepared, the Debtor has not provided her with documentation or an explanation supporting his income and losses in such years.

133.    The Debtor has failed to satisfactorily explain his losses and deficiencies of assets.

134.    Pursuant to 11 U.S.C. § 727(a)(5), the Debtor should be denied his discharge.

## COUNT SIX

**Denial of Discharge Pursuant to 11 U.S.C. § 727(a)(6) – Refusing to Comply with Orders**

135.    The United States Trustee re-alleges and incorporates the allegations contained in paragraphs 1 through 134.

136.    The Bankruptcy Code provides that the Court shall grant the debtor a discharge unless the debtor has refused, in the case, to obey any lawful order of the court, other than an order to respond to a material question or to testify.    11 U.S.C. § 727(a)(6)(A).

137.    The Debtor has refused to comply with the Subpoenas issued pursuant to the 2004 Order.

138.    The Debtor has refused to comply with the Discovery Order.

27

139.    The Debtor has refused to comply with the Order to Compel.

140.    The Debtor has refused to comply with the Contempt Order, by refusing to comply with the Order to Compel.

141.    The Debtor has refused to comply with the Contempt Order, by refusing to appear for a Court-authorized examination by Ms. Biggett.

142.    The 2004 Order, the Discovery Order, the Order to Compel and the Contempt Order are lawful orders of this Court.

143.    Pursuant to 11 U.S.C. § 727(a)(6)(A), the Debtor should be denied his discharge.

**WHEREFORE,** the United States Trustee respectfully requests that the Court deny the Debtor a discharge pursuant to 11 U.S.C. §§ 727(a)(2)(A), 727(a)(2)(B), 727(a)(3), 727(a)(4)(A), 727(a)(4)(D), 727(a)(5) and 727(a)(6)(A).

Dated: New York, New York
      November 22, 2013

                    TRACY HOPE DAVIS
                    UNITED STATES TRUSTEE

        **By:**    */s/ Andrew D. Velez-Rivera*
                    Trial Attorney
                    U.S. Federal Office Building
                    201 Varick Street, Room 1006
                    New York, New York 10014
                    Tel. No. (212) 510-0500; Fax No. (212) 668-2255